Our last case for oral argument this morning is 21-2947 East Coast Entertainment v. Houston Casualty Company. Good morning, Mr. Jacobson. Good morning. May it please the court, my name is Andrew Jacobson and I have the privilege of representing East Coast Entertainment of Durham LLC in urging this court to reverse the lower court's order dismissing our complaint and entering judgment in favor of the defendants with respect to insurance coverage as it relates to the COVID-19 situation. There has been a lot of, the law in this area has been developing quickly, continues to develop quickly, and there have been four supplemental authority requests made to the court and so I think where I want to focus is whether or not there remains, the key question tends to turn on whether or not there's direct physical loss or damage to property. And the Illinois Appellate Court cases submitted and the latest Western District of North Carolina Federal Court cases conclude that physical loss or damage to property requires some sort of, almost at a material science level, change to the property or damage to the property. So the question remains is whether or not there is an avenue for reversal here in light of the way the law is developing. And I'm here to urge that there is and that it largely stems from this court's decision in the Sandy Point case. What distinguishes appellant here from most of the, from virtually all of the plaintiffs that have lost these kinds of cases in the past is that our clients are movie theaters. In Sandy Point, the clients were a dental practice, a restaurant, and a hotel operator. The difference is that the restaurants were allowed to do carry out and delivery. The hotel was designated an essential service in Sandy Point so that they could continue lodging. They also had a dining component where they could do carry out and delivery including room service. And even the dental office was authorized to continue to operate and provide dental services under, for emergencies. And that's true of the two Illinois appellate court cases that have come out most recently. Both of those involve restaurants that were allowed to continue. So there was this issue of whether or not is partial loss of your property a physical loss. And generally most courts have said it may not be your preferred use but you're still able to use it. And what the court in Sandy Point said, this court said in Sandy Point is that there are cases for example where there are noxious gases or asbestos fibers, presence of ammonia, presence of carbon dioxide, things like that. And the court said those are closer because, pardon me one second, the gas infiltration in those cases led to more than a diminished ability to use the property. It was so severe that it led to complete dispossession, something easily characterized as a direct physical loss. I'm sorry. That's okay. Do you want to grab your water? Yeah. Okay, we can hold the clock for a minute if you want to grab your water. I did take a test. Thank you. So this court in Sandy Point did leave open the question of whether or not a physical loss of use could be direct physical loss where you've essentially been dispossessed from the property. And here, because they're a movie theater, there's nothing in the record that suggests there's a retail or dining component that they could still operate. And so I think that's important here to show that there is an opening there. And I think when we get into the, for example, when we get into… And I realize that came out after you filed your opening brief. The court construed essentially identical language here and found that because that mere loss of use due to COVID restrictions didn't suffice under the policy and that there had to be some physical alteration of the property, which is not what you've alleged here. You're essentially alleging loss of economic use because the movie theaters had to close. Well, we did allege in our complaint that it was likely that COVID was present on the premises. But that was rejected as well in Sandy Point. I think that even in Sandy Point, I don't think this court adequately grappled with the asbestos and the noxious gas cases. For example, the court says the reasoning in the asbestos cases indicates that the courts deem physical injury to be present because asbestos causes a physical alteration to property, not because the asbestos leads only to loss of use. Would we have to overrule Sandy Point to find in your favor? No, I think what you could do is, I guess the ruling would say, as we said, we leave for another day the question of whether or not a false dispossession of your use can qualify as direct physical loss. And if you look, for example, at the gas cases, the ammonia case, which is the Gregory packaging case, there there was ammonia present on the property. All they had to do was air it out and wipe it down with water. And it was a five to seven day period of loss. And that was still considered direct physical loss. On the asbestos cases, we're not talking about removal of an asbestos bearing item, but we're talking about whether or not there was a direct physical loss by the presence of asbestos fibers in the air of other parts of the area. So the court here in Sandy Point said, well, in those cases, the court found direct physical loss, but doesn't grapple with the question of why COVID-19 is more akin to ammonia gases, carbon monoxide or fibers than some other kind of damage. And it can't turn on the difficulty in remediating because that's not part of the test. That's what you do with your premiums or the price of the policy or your deductible. So it can't be that because COVID can be cleaned by wiping it down and using disinfectants. It's no different than ammonia or carbon monoxide, which primarily involves airing out of premises. What turned in those cases was that you had virtual dispossession from the property. That is, there was no use to which the property could be used. You couldn't do emergency dental surgery. You couldn't do carry out or delivery. And, for example, in Illinois, in terms of predicting what the Illinois Supreme Court would do, even the most recent cases that have come out, and this is the second submission of supplemental authority, the Sweet Berry Cafe versus Society Insurance case, that court held, we conclude that the policy unambiguously requires a physical alteration or substantial dispossession. Not merely loss of use. So, again, when you're saying, I couldn't use it to its full extent because I could only do carry out and delivery, which was the case in Sweet Berry, and they rejected that, said that kind of partial loss of use doesn't work. The Illinois Appellate Court has left open that physical alteration or a substantial dispossession could be a physical loss under this policy language. And I think the last thing I'll say in that regard is a lot of this turns on what the Supreme Court did in Eldridge, the Illinois Supreme Court. And it's important to note there that the policy said physical injury to property. And here we have physical loss of or damage to property. And I would contend that physical injury to property does suggest something's happening directly to the property. But physical loss of property includes dispossession, not being able to use it under both the dictionary definitions and under court decision definitions as they have been used. So, in conclusion for now, I would say that we urge reversal where this has resulted in substantial dispossession of the property as contemplated by the Illinois Appellate Court decision in Sweet Berry Cafe. Thank you, Mr. Jacobson. Mr. Petterman. Good morning, Your Honor. Good morning. I may please the court. My name is Jonathan Petterman. I represent the Houston Casualty Company and American Claims Management. We'll focus primarily on the issue of whether there is adequate allegations of complete dispossession of the property as counsel was focused on. And where counsel got it wrong is that where Sandy Point and the recent Illinois Appellate Court decisions have focused on a complete dispossession of property. And that would fit within the asbestos cases and the gas cases in which nobody could access or actually utilize the property. So there is a complete dispossession of the property. Here, there are absolutely no allegations in the complaint that would support such a conclusion. Rather, the allegations make clear that they couldn't use the property for its intended use, which is exactly what Sandy Point rejected and what the other district courts, interpreting both Illinois and North Carolina law, have rejected. The appellants could have used the property for a number of purposes. They could have used it for storage. They could have used it for office space. They could have used it for a myriad of reasons. But they couldn't use it for their intended use. The mere loss of the intended use is insufficient to demonstrate dispossession, as this court found in Sandy Point. And the other district courts have construed in North Carolina law, as well as the two recent Illinois Appellate Courts, construing Illinois law. So absent complete disposition of property, which is not alleged here, and just to make clear, both Illinois and North Carolina law place the burden on the insured to demonstrate that their allegations fall within coverage. Here, there are no allegations in the complaint that demonstrate a complete dispossession of the property as required. And this idea of dispossession of property is best served by understanding what's being insured. What's being insured here is the property. It's not an economic bond. It's not a guarantee of income. The insurance is protecting the property. Here, there are no allegations that support a tangible harm, which is required following Sandy Point, as well as Sweet Berry Cafe and Lever State Farm, the recent Illinois Appellate Court decisions, as well as the authority in North Carolina. And so what we're left with is that the appellants simply cannot use their property, could not use their property for its intended use, which has always been insufficient. With that, if there are not any questions for us, we'll be happy to stand on our briefs and yield our time. There don't appear to be any questions, so thank you. Thank you. Thank you. Mr. Jacobson, you have a bit of time left for rebuttal. I guess I will respond to the last point, which said that the only thing being insured here was the property. This policy did include a provision for business income lost during periods of dispossession from the property or from when there is a physical loss. So it is not true that it's just a matter of insuring the bricks and mortar of the building. There is a business income endorsement to this policy under which we made a claim and under which they've denied a claim. So that's not accurate. With respect to dispossession, what we allege is that the governor of North Carolina entered an executive order on March 23, 2020, it's order number 120, ordering entertainment venues such as movie theaters to close. They didn't say you can use it to suddenly start a carryout business or anything else. It was just a closure order. And so we do believe that that's sufficient in terms of the allegations in the record to date to show that we've been dispossessed. How does your argument about dispossession work with this period of restoration definition in the policy, where a period of restoration runs from the date of the physical loss or damage, and you say that's dispossession, to the date when the property should be repaired, rebuilt, or replaced. None of those happened here. Or the date when business is resumed at a new permanent location, which did not happen here. I think that if you accept that dispossession can qualify as a direct physical loss, then the period of restoration would be the time period until you are restored to that possession that you lost. And I think that's a natural reading. So it gains a new definition not specified in the contract. Well, it is called period of restoration. And it is true that in the ammonia cases, for example, they had to clean, and you would have to clean here. It may not be that the remediation, that's a repair, if you will. You know, the best I can do besides that is, you know, let's repair to the drawing room. So you're returning to the place so that you're returning to the place where you lost the possession. So we would say that would be triggered until you're restored to possession by either the lifting of the closure order or your premises being cleaned and disinfected so that you can reopen to the public. Thank you, Mr. Jacobson. The case will be taken under advisement. And that concludes our oral arguments for this morning.